## BENJAMIN F. PERRY *vs.* AMOS BINNEY.

If the owner of a mill and dam with a water privilege conveys the same by a deed referring to his grantor's deed for a specification of the privilege, the privilege which he conveys must be measured by his grantor's deed, and not by the use he is actually making of the water at the time of his conveyance.

To prove how high the water has been raised in a mill pond, it is competent to refer to marks not only in the channel, but on the bank or any other place to which the water has flowed.

COMPLAINT under the mill act, Gen. Sts. *c.* 149, for flowing the complainant's meadows by the respondent's dam from January 1, 1867, to July 18, 1867, the date of the complaint.

Trial, and verdict for the respondent, in the superior court, before *Reed*, J., who allowed a bill of exceptions, the substance of which appears in the opinion except so far as relates to the form of the verdict, in regard to which the facts were stated in the bill substantially as follows: The case was committed to the jury in the afternoon, and their foreman sent to the judge the next morning a writing which stated that "the jury respectfully ask, in view of the fact that there seems to be no other way of arriving at a verdict, if they may not, in finding a verdict for the respondent, append a clause in relation to fixing the right to flow at a particular point, upon which they may be able to decide in case such permission be granted;" to which request, the jury being brought into court, the judge replied, against the respondent's objection, that he knew "no rule of law which will prevent the jury from appending to their verdict for the respondent a finding as to the right to flow to a particular point," but added "that any such finding would not bar or prevent future actions between the same parties as to the same right, and would probably be of no effect in case such action should be brought;" whereupon the jury again retired, and after an absence of six hours returned into court a general verdict for the respondent, and "a supplemental paper" containing a special finding that the respondent had established his right to maintain his dam, without compensation, to at least a specified height, from April 20 to October 20 in each year.

*S. B. Ives, Jr.*, & *S. Lincoln, Jr.*, for the complainant.

*A. A. Abbott*, for the respondent.

CHAPMAN, C. J. The dam which is the subject of complaint is built across the Saugus River; and the river there forms the dividing line between Lynnfield and Wakefield. There was a mill on each side of the river, connected with the dam. In March 1843, Adam Hawkes conveyed the mill on the Lynnfield side to Edward Upton and David Preston. Preston conveyed his interest to Upton in August 1844; on November 27, 1844, Upton conveyed to John Wiley; and the respondent claims by mesne conveyances under Wiley. While Upton owned the mill,

and when he conveyed it to Wiley, he owned the farm now owned by the complainant, including the meadow now flowed by the respondent.

Upton's deed to Wiley conveys " a lot of land of one third of an acre, more or less, with a mill and other buildings thereon," describing it by metes and bounds, " together with all the water privilege that was conveyed by Adam Hawkes to Edward Upton and David Preston by deed of warranty," (stating date and registry,) " the owners of the mill to keep, so long as they make use of the water privilege, that part of the flume in Lynnfield in good repair."

As to the construction of this deed, the court instructed the jury " that if, while Upton owned the mill, in 1843 and 1844, he kept up the dam so as to flow his own farm, higher than it had been previously flowed, and kept it so flowed, and it was so kept flowed at the time he sold, and the jury should be of opinion that such flowage was reasonably necessary to the use of the mill, and then conveyed the mill to Wiley, the right so to flow would pass by his deed as appurtenant to the mill, and the respondent, having Wiley's title, would be entitled to a verdict, and this although Upton only had title to one mill and half the dam, while the respondent used both mills and the whole dam ; and that, if they found such to be the fact during Upton's ownership of the mill, they need not consider any question of prescriptive right."

This ruling was objected to, and the court are of opinion that it was erroneous.   By the terms of the deed, as recited above, the conveyance was not of the water power as then used, but as defined by the deed of Hawkes.   Upton might have been using more power than he was willing to sell; and he had a right to sell what he purchased of Hawkes, and not sell the remaining part that he was then using.   By the terms of his deed he did this ; and the measure of the rights acquired by Wiley was the description in Hawkes's deed.   That deed conveys the land by metes and bounds, " with a clothier's and fulling mill and other buildings thereon," " with privilege to use as much water at all times (if so much there be) as is necessary for the

use of said clothier's and fulling mill, the owners or tenants of said clothier's and fulling mill to keep, so long as they make use of the water privilege, that part of the flume in Lynnfield in good repair." The inquiry should have been, what extent of flowage was authorized by this deed ?

The court refused to allow any testimony to be introduced as to the height of the water upon certain meadows, which were above the respondent's dam and near the complainant's meadow, at any time, past or present, or any comparison of the height of water upon their meadows at one time with another time; but did allow the complainant to state the height of the water in the river at any point at any time, and to compare its height in the river at one time with its height at another time.

If by the height of the river upon the meadows is meant its depth, the evidence offered would be immaterial. It would not be pertinent to the case, nor would it be reliable as showing the point to which the surface of the mill pond flowed, because the surface of the meadow might not be always the same. If it included evidence as to the effect of the water on the herbage, it would be inadmissible, because it would raise collateral issues, as in *Lincoln* v. *Taunton Copper Co.* 9 Allen, 181. But if the offer was to show the height of the water in the pond at various times, by reference to a mark or some object which served the purpose of a mark, the evidence would be pertinent ; for the surface of the water is substantially the same at all points, and it is immaterial whether the mark that indicates it stands in the channel, or on the bank, or at some distance back from the bank, where the water comes when it is at its higher stages. The court understand the ruling as excluding evidence in respect to a mark showing the surface of the water, unless the mark is in the channel. If so, it was erroneous.

The course pursued by the jury in regard to the verdict was irregular ; but, as it will not be likely to be repeated, it is not necessary to remark upon it. *Exceptions sustained.*